UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TRICIA BALDWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00246-SEB-DLP |
| | ) | |
| GREENFIELD POLICE DEPARTMENT, | ) | |
| JILL HATKE Individually and as an Officer | ) | |
| with the Greenfield Police Department, | ) | |
| RANDY RATLIFF Individually and as an | ) | |
| Officer with the Greenfield Police Department, | ) | |
| CITY OF GREENFIELD, INDIANA, | ) | |
| HANCOCK COUNTY, INDIANA, | ) | |
| HANCOCK COUNTY SHERIFF'S | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER RESOLVING OUTSTANDING MOTIONS [DKT. 20; DKT. 23;
DKT 27; DKT. 28; DKT. 39; DKT. 40]**

On January 29, 2018, Plaintiff Tricia Baldwin initiated this lawsuit, alleging

violations of her civil rights pursuant to 42 U.S.C. § 1983 and various state law claims,

against the Greenfield Police Department, the City of Greenfield, Indiana, and Officers

Jill Hatke and Randy Ratliff of the Greenfield Police Department in their individual and

official capacities ("the City Defendants") as well as Hancock County, Indiana and the

Hancock County Sheriff Department ("the County Defendants") [Dkt. 1].

Before the Court now are six motions filed by various Defendants: the County

Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed on

December 10, 2018 [Dkt. 20]; the City Defendants' Motion for Judgment on the

Pleadings under Federal Rule of Civil Procedure 12(c) filed on December 28, 2018 [Dkt. 23]; the City Defendants' Motion for Summary Ruling[1] [Dkt. 27] filed on January 15, 2019; the County Defendants' Motion for Summary Ruling [Dkt. 28] filed on January 16, 2019; and the Defendants' Motions to Dismiss for Lack of Prosecution [Dkt. 39; Dkt. 40] under Federal Rule of Civil Procedure 41(b), filed on April 15, 2019 and April 17, 2019.

For the reasons set forth below, the County Defendants' Motion to Dismiss for Failure to State a Claim [Dkt. 20] is GRANTED; the City Defendants' Motion for Judgment on the Pleadings [Dkt. 23] is GRANTED in part and DENIED in part; the Defendants' Motions for Summary Ruling [Dkt. 27; Dkt. 28] are DENIED as moot; and the Defendants' Motions to Dismiss for Lack of Prosecution [Dkt. 39; Dkt. 40] are DENIED.

## Background

### I.    Factual Background

The Complaint includes the following relevant facts, all taken as true for the purposes of the County Defendants' motion to dismiss for failure to state a claim and the City Defendants' motion for judgment on the pleadings.

On November 10, 2015, Officer Hatke, acting on behalf of the Greenfield Police Department, was dispatched to a Greenfield Walmart in response to a reported theft [Compl. ¶¶ 16-17]. The Walmart Asset Protection Manager informed Officer Hatke that she had observed security footage which captured two individuals, one female and one

---

[1] Although docketed as a Motion to Dismiss for Lack of Prosecution, the City Defendants' January 15, 2019 motion does not request such relief. It solely requests a summary ruling on its Motion for Judgment on the Pleadings [Dkt. 27].

male, as they stole two Ultimate Ears Boom Speakers. [*Id.* ¶¶ 18-19, 24]. The Asset Protection Manager recorded the license plate number of the perpetrators. [*Id.* ¶ 18]. Officer Hatke and Officer Ratliffe, also of the Greenfield Police Department, searched for the individuals associated with that license plate number [*Id.* ¶ 21]. Based on their search, and a review of the surveillance video, as well as the driver's license information for Ms. Baldwin, the officers filed an Affidavit for Probable Cause against Ms. Baldwin [*Id.*]. On November 11, 2015, Officer Hatke signed an Information, alleging that Ms. Baldwin had committed theft by stealing the speakers from Walmart [*Id.* ¶ 20]. Relying on Officer Hatke's signed Information and the Affidavit for Probable Cause, the Hancock Superior Court found probable cause and issued a warrant for Ms. Baldwin's arrest [*Id.* ¶ 22].

Officer Ratliffe, upon further investigation of the Walmart theft, discovered that the license plate number recorded by Walmart's Asset Protection Manager was registered to two men—Raymond Gibbs and Brian Overby [*Id.* ¶ 23]. Officer Ratliff searched the LeadsOnline[2] system and learned that Mr. Gibbs had pawned two Ultimate Ears Boom speakers two days after the Walmart theft [*Id.* ¶ 24]. Officer Ratliffe located the pawn shop where Mr. Gibbs and a female companion, determined to be Sarah Joy, pawned the speakers [*Id.* ¶ 25]. Officer Ratliffe confirmed, via her BMV photo, that Ms. Joy was the female perpetrator captured in the Walmart surveillance video [*Id.* ¶ 26]. On January 14, 2016, Officer Ratliff filed his Probable Cause Affidavit naming the male and female suspects whom he believed committed the theft at Walmart the previous November [*Id.* ¶

---

[2] LeadsOnline "is a technology service helping law enforcement catch criminals while helping businesses reduce the hassle of reporting." *About LeadsOnline*, LEADSONLINE, https://www.leadsonline.com/main/about-leadsonline.php.

27]. The Hancock County Prosecutor filed theft charges against Sarah Joy for the theft of the speakers from Walmart. [*Id.* ¶ 27].

In January of 2016, Ms. Baldwin was serving a misdemeanor sentence in the Owen County jail on another charge [*Id.* ¶ 29]. She was ordered released from that sentence on January 20, 2016 but was detained in the Owen County jail based on the arrest warrant relating to the Walmart theft [*Id.* ¶ 29-30]. She was held a few days until she was picked up by deputies of the Hancock County Sheriff Department [*Id.* ¶ 31]. On January 22, 2016, while Ms. Baldwin was detained at the Owen County jail, Ms. Joy's arrest warrant was executed, and the Walmart theft case was set for trial [*Id.* ¶ 32].

Ms. Baldwin's family contacted Officer Hatke and Office Ratliff during the time Ms. Baldwin was awaiting extradition to Hancock County, but the officers refused to speak to her family [*Id.* ¶ 33]. On February 1, 2016, Ms. Baldwin appeared for an initial hearing, and the Court entered a preliminary plea of guilty[3] and set the matter for a pretrial conference [*Id.* ¶ 34-35]. Ms. Baldwin's family again attempted to contact Officer Hatke and Officer Ratliff about what they believed to be the mistaken identity. This second attempt at contact was successful and, upon learning of the error, the Hancock County Prosecutor's Office moved to dismiss the case against Ms. Baldwin and notified the jail to release her immediately [*Id.* ¶ 36-37].

Ms. Baldwin has brought a variety of legal claims against Defendants based on these facts.

---

[3] While the Complaint states she entered a plea of guilty, a quick review of the state court docket reveals she entered a plea of "not guilty."

## II.     Summary of Claims in the Complaint

Counts I and II are captioned "Violations of Constitutional Rights." Count I alleges that Officer Hatke, Officer Ratliff, the Greenfield Police Department, and the Hancock County Sheriff Department violated Ms. Baldwin's constitutional rights pursuant to the Fourth and Fourteenth Amendments in the form of false arrest, imprisonment, and malicious prosecution and requests an award of compensatory damages [*Id.* ¶ 39]. Count II restates the allegations in Count I but requests an award of exemplary damages, claiming the aforementioned Defendants acted with malice, and with willful and wanton indifference to and deliberate disregard of Ms. Baldwin's constitutional rights [*Id.* ¶ 42].

Count III lays out a claim for "Violation of Statutory Rights," invoking 42 U.S.C. § 1983 and targeting the same four defendants with identical allegations of false arrest, imprisonment, and malicious prosecution for which Plaintiffs seeks compensatory damages [*Id.* ¶ 45]. Count IV restates these allegations and requests exemplary damages from these defendants pursuant to 42 U.S.C. § 1983.

Count V alleges that the Greenfield Police Department and the City of Greenfield violated Ms. Greenbank's statutory civil rights by adopting the policy and practice of authorizing officers, including Offer Hatke and Office Ratliff, "to cover up false arrests and imprisonments of citizens and the malicious prosecution of multiple individuals for crimes they know they did not commit" [*Id.* ¶ 52]. Ms. Greenbank alleges it is the policy and practice of the Greenfield Police Department and the City of Greenfield to encourage and cause constitutional and civil rights violations by its officers [*Id.*] Count V also states

that the Greenfield Police Department and the City of Greenfield refused to adequately train, direct, supervise, and control Officer Hatke and Officer Ratliff, who were acting within the scope of their employment and pursuant to the policies of these defendants, so as to prevent the violation of Ms. Baldwin's constitutional and civil rights [*Id.* ¶ 45-46].

Count VI alleges state law claims of false arrest and false imprisonment against Officer Hatke. Ms. Baldwin claims that Officer Hatke caused her false arrest and false imprisonment by maliciously filing a false affidavit, which gave rise to the issuance of a baseless arrest warrant [*Id.* ¶ 57-59].

Count VII seeks exemplary damages from Officer Hatke for Ms. Baldwin's false arrest and imprisonment, averring that Officer Hatke acted maliciously and with willful and wanton disregard for Ms. Baldwin's constitutional and civil rights when Officer Hatke made false statements that resulted in Ms. Baldwin's arrest and imprisonment without probable cause. [*Id.* ¶¶ 62-63].

Count VIII asserts a state law claim of malicious prosecution against Officer Hatke, Officer Ratliff, the Greenfield Police Department, the City of Greenfield, and Hancock County. More specifically, the Complaint alleges that Officer Hatke filed an Affidavit for Probable Cause containing false testimony and untruths, which Officer Ratliff knew to be false, causing criminal charges to be brought against Ms. Baldwin. Ms. Baldwin also claims Officer Ratliff neglected to act in his supervisory capacity to discover that duplicate charges had been brought for the same Walmart theft. [*Id.* ¶¶ 67-68].

Count IX alleges that the Greenfield Police Department is liable for the actions of Officer Hatke and Office Ratliff under the doctrine of respondeat superior on the state law claims. Ms. Baldwin asserts that the officers acted as agents for the Greenfield Police Department, and that they were acting within the scope of their employment when the alleged violations occurred [*Id.* ¶¶ 72-74].

Count X invokes respondeat superior liability against the City of Greenfield as the "operator and governor" of the Greenfield Police Department. [*Id.* ¶ 77-81].

Count XI reiterates Ms. Baldwin's respondeat superior liability claim against Hancock County as the operator of the Hancock County Jail and the Prosecutor's Office. [*Id.* ¶¶ 83-88].

Finally, Count XII alleges intentional infliction of emotional distress against Officer Hatke, Officer Ratliff, the Greenfield Police Department, the City of Greenfield, and Hancock County [*Id.* ¶ 91]. Ms. Baldwin alleges that these Defendants acted in a reckless or intentional manner resulting in the deprivation of Ms. Baldwin's constitutional and civil rights. [*Id.*]. Ms. Baldwin also states that Defendants' willful and wanton disregard for her civil and constitutional rights was so extreme and outrageous as to cause Ms. Baldwin to suffer extreme emotional distress, for which she has been required to seek professional help to address. [*Id.* ¶¶ 92-95]. Ms. Baldwin specifically claims the misrepresentations and untruths set forth in the Affidavit for Probable Cause forced her to remain in jail for days without any idea as to the reason, resulting in her emotional distress. [*Id.* ¶ 93].

Plaintiff alleges that Defendants' actions were performed under color of law, including of a statute, ordinance, regulation, custom or usage [*Id.* ¶ 13].

### III.    Plaintiff's Counsel's Lack of Diligence and Litigation Deficiencies

We digress to detail our concerns about the dilatory conduct of Ms. Baldwin and her counsel, Jared Thomas, in prosecuting this case, demonstrating over the course of many months no apparent interest in bringing it to a resolution or any regard for the Court's scarce resources that had to be expended in an effort to keep them on task.

Nearly nine months after this case was filed, in October 2018, we were required to order Ms. Baldwin and her counsel to show cause why the Complaint should not be dismissed for failure to prosecute because Defendants had not yet been served [Dkt. 6]. Mr. Thomas, blaming his former paralegal, responded that she has erroneously told him that she had mailed copies of the file-marked Complaint, Appearance, and Summons to Defendants [Dkt. 8, at 1-2]. Only after we issued our Order, says Mr. Thomas, did he discover that the materials had not ever been mailed. [*Id.*]. Mr. Thomas moved for leave to issue additional service, which request we granted, and discharged our Order to Show Cause [Dkt. 7; Dkt 11; Dkt 12].

Once served, the County Defendants filed their motion to dismiss [Dkt. 20], and the City Defendants answered the Complaint [Dkt. 22] and filed their motion for judgment on the pleadings. Under our rules, Plaintiff was allowed twenty-one days to respond to the former motion and fourteen to respond to the latter, S.D. Ind. L.R. 7-1(c)(2)-(3); both deadlines came and went without a word from Ms. Baldwin or her counsel, eventually prompting both sets of defendants to seek summary rulings on their

dispositive motions [Dkt. 27; Dkt 28]. On January 28, 2019, we ordered Plaintiff to file responses to both Rule 12 motions within fourteen days or face dismissal of the Complaint with prejudice [Dkt. 32]. Plaintiff, apparently again because of our prompting, responded within the prescribed timeframe [Dkt. 33; Dkt. 34]. Having finally acted on our directive, thereby allowing us to rule on the dispositive motions with complete responses from all parties, we now DENY Defendants' motions for summary rulings as moot [Dkt. 28].

However, Ms. Baldwin and her counsel's inattentiveness to the prosecution of her legal claims continued. Plaintiff failed to comply with a single Case Management Plan deadline or discovery request [Dkt 39, at 3-6; Dkt. 50, at 3].[4] At a status conference with the Court on April 23, 2019, Mr. Thomas indicated that he had been unsuccessful in completing discovery because his client was not communicating with him. He claimed to have sent her a letter on April 15, 2019, requesting that she certify the discovery responses. Mr. Thomas also indicated that he requested Plaintiff to certify that she still wished to pursue the case.[5]

---

[4] Ms. Baldwin did not: serve initial disclosures by February 25, 2019; file and serve preliminary witness and exhibit lists by March 4, 2019; submit a settlement demand by March 14, 2019; or timely respond to Defendants' interrogatories and requests for production [Dkt 39, at 3-6].

[5] While Mr. Thomas attempts to shift some of the responsibility for the neglect of this matter to his client, it has come to our attention that Mr. Thomas was recently disciplined by the Indiana Supreme Court for breaching his duty to act with reasonable diligence and promptness in representing clients in another case. *Matter of Thomas*, 111 N.E.3d 1013 (Ind. 2018). We are pretty sure we know is responsible for the instant failure. We have denied the motions to dismiss for lack of prosecution on that basis. *Ball v. City of Chi.*, 2 F.3d 752, 757 (7th Cir. 1993) (stating that the prospect of punishing an innocent client for an attorney's missteps should "induce caution.")

Inexplicably, Mr. Thomas failed to appear for the Court's next status conference on May 2, 2019, leaving the Magistrate Judge to wonder whether either Mr. Thomas or Ms. Baldwin intended to continue the pursuit of her legal claims [Dkt. 49]. The Magistrate Judge again ordered Mr. Thomas to show cause why he should not be sanctioned [*Id.*]. Mr. Thomas appeared on May 14, 2019 and again assured the Court that his errors and inattentiveness would not continue [Dkt. 51]. In reliance on those assurance, the Magistrate Judge, again, discharged the Order to Show Cause.

Unbelievably, Mr. Thomas again failed to appear at the next status conference on June 26, 2019, resulting in the issuance of another order to show cause [Dkt. 55]. The Magistrate Judge vacated the subsequent settlement conference scheduled for July 31, 2019 [Dkt. 56]. On August 2, 2019, the Magistrate Judge granted the County Defendant's unopposed motion to stay case management deadlines pending rulings on the dispositive motions [Dkt. 57]. Mr. Thomas appeared at his third hearing to show cause on August 27, 2019, this time blaming his neglect on his heavy caseload, conflicting schedule of court hearings, and office restructuring [Dkt. 59]. The Magistrate Judge again discharged the Order to Show Cause with the explicit instruction to Mr. Thomas to either respond to Defendants' discovery requests, with notice to the Court or file a motion to withdraw from the case by September 9, 2019.

In the interim, Plaintiff's continued failure to comply with the Case Management Plan and refusal to respond to discovery requests led the City Defendants to file their motion to dismiss for lack of prosecution on April 15, 2019 [Dkt. 39]. The County Defendants joined the motion on April 17, 2019 [Dkt. 40]. Plaintiff responded in

opposition on May 6, 2019—her first action in this case that was not specifically mandated by the Court [Dkt. 50]. Plaintiff did not dispute her failure to comply with the CMP or timely respond to discovery requests; in fact, no explanation was offered for this inattentiveness, other than: "Counsel for Plaintiff disclosed the issues in communication he was having with the Plaintiff as well as the measures Counsel had undertaken to obtain the responses to the outstanding discovery, case management plan, and preliminary witness and exhibit lists" in April 2019 [*Id.* at 3].

By September 10, 2019, still no action had been taken to comply with the schedule for pretrial activity, prompting the Magistrate Judge to contact Mr. Thomas to inform him that his deadline to either respond to discovery or withdraw from the case had expired. Mr. Thomas informed the Magistrate Judge that he would file notices with the Court by close of business. That night, Mr. Thomas filed belated notices informing the Court that responses to Defendants' requests for productions and interrogatories had been served that day [Dkt. 60; 61].

Given the strong preference among the Court for deciding cases on their merits, we will DENY defendants' motions to dismiss for lack of prosecution [Dkt. 39; Dkt. 40]. However, we do so with a continuing concern about Plaintiff's intentions in prosecuting her case. As a result of Mr. Thomas's inattentiveness and dilatoriness to this litigation, the Complaint came precariously close to dismissal with prejudice. His last-minute filing of the discovery notices, occurring only after specific prodding from the Magistrate Judge, allowed the Complaint to survive. We admonish Plaintiff and her counsel that they have used up the Court's grace and patience. So long as this litigation remains pending on

our docket, we expect diligent, good-faith prosecution. Otherwise, the Complaint will be subject to dismissal with prejudice and Mr. Thomas will likely face professional sanctions.

## Legal Analysis[6]

### I.  The City Defendants' Motion for Judgment on the Pleadings

The City Defendants request a judgment on the pleadings for all claims against them: Counts I, II, III, IV, V, VI, VII, VIII, IX, X, and XII. We address each claim in turn below.

#### A.  Standard of Review

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the pleadings are closed, but early enough not to delay trial. We review motions for judgment on the pleadings under the same standard by which we review motions to dismiss for failure to state a claim under Rule 12(b)(6). *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). "Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (*quoting Craigs, Inc. v. General Elec. Capital Corp*., 12 F.3d 686, 688 (7th Cir. 1993)).

---

[6] As is noted hereafter, there are several instances in which Plaintiffs has failed to defend against the Defendants' attacks on the Complaint. In remaining mute, Plaintiff has waived any argument on the merits of those issues. *Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.,* 912 F.3d 1049, 1052 (7th Cir. 2019).

In determining the sufficiency of a claim under this standard, the court considers all allegations in the nonmovant's pleading to be true and draws such reasonable inferences as required in the nonmovant's favor. *Jacobs v. City of Chi.*, 215 F.3d 758, 765 (7th Cir. 2000).

### B. Discussion

*1. Whether the Greenfield Police Department Can Be Sued*

The City Defendants first argue that the Greenfield Police Department, as an agency of the City of Greenfield, is not a "unit" of government that is subject to being sued [Dkt. 24, at 10-11]. As the City Defendants concisely and accurately state:

> Under Indiana law, a municipal corporation is a "unit, ... or other separate local governmental entity that may sue and be sued." Ind. Code § 36–1–2–10. A 'unit' means county, municipality, or township, Ind. Code § 36–1–2–23, and a municipality is a city or town. Ind. Code § 36–1–2–11. Thus, Indiana law does not grant municipal police departments the capacity to sue or be sued. *See Martin v. Fort Wayne Police Dep't*, 2010 WL 4876728, at *3, (N. D. Ind. 2010). *See also Sow v. Fortville Police Dept.*, 636 F.3d 293 (7th Cir. 2011) ("In this case, the district court properly concluded that the McCordsville Police Department and the Fortville Police Department are not suable entities") . . . In Indiana, municipal police departments "are not suable entities." *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012), *Smith v. Evansville Police Department*, 2018 WL 835697 (S. D. Ind. 2018) (2/13/2018).

[*Id.* at 11].

Plaintiff responds that the Greenfield Police Department is liable for the actions of Officer Hatke and Officer Ratliffe under the doctrine of respondeat superior [Dkt 33, at 4]. Ms. Baldwin has not provided any cases to support her assertion or counter the arguments of the City Defendants, we assume because none exist; simply put, well-established case law makes clear that respondeat superior liability is not a basis for

holding municipal agencies liable under Section 1983. *Shields v. Illinois Dep't of Corr.*,

746 F.3d 782, 790 (7th Cir. 2014) (*citing Monell v. Dep't. of Social Services*, 436 U.S.

658 (1978). Further, Indiana's statutory prohibition against suing police departments[7]

applies to suits invoking respondeat superior liability. *Ball v. City of Indianapolis*, 760

F.3d 636, 643 (7th Cir. 2014); *McCoy v. City of Fort Wayne*, No. 1:11-CV-18 PS, 2011

WL 2489973, at *2 (N.D. Ind. June 22, 2011). Accordingly, all claims against the

Greenfield Police Department must and will be dismissed with prejudice.

    2. *Whether Officer Hatke and Officer Ratliff Can Be Sued in Their Official*
       *Capacities*

      The City Defendants argue that section 1983 is not a vehicle for suing officers for

damages for actions taken in their official capacities, because "official capacity" suits are

merely another way to sue the entity of which the officer is an agent [Dkt. 24, at 11];

*Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official

capacity are not 'persons' for purposes of the [Section 1983] suit because they assume the

identity of the government that employs them."). Plaintiff responds that the officers can

indeed be sued for damages in their official capacities when acting under color of law

[Dkt. 33, at 4].

      The City Defendants have misapplied the rule that state officers sued for damages

in their official capacities are not "persons" for purposes of Section 1983 suits. This is

correct with respect to state officials, but it is not correct when applied to municipal

---

[7] "The United States Supreme Court has instructed that local government liability under § 1983
'is dependent on an analysis of state law.'" *Sow*, 636 F.2d at 300 (7th Cir. 2011) (*quoting
McMillian v. Monroe County*, 520 U.S. 781, 786 (1997)).

officers. Unlike state officers, municipal officers may be sued in their official capacities—although the suit is treated as one against the municipal entity. *Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014) (*citing Monell*, 436 U.S. at 690-95 (1978); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989).

Plaintiff's suit against the officers in their official capacities does not warrant dismissal on that ground. Our analysis of the City Defendants' motion for judgment on the pleadings proceeds accordingly.

3. *Counts I and II (Violations of Constitutional Rights Against Officer Hatke, Officer Ratliff, the Greenfield Police Department, and the Hancock County Sheriff Department)*

The City Defendants seeks the dismissal of Counts I and II, which allege that Officer Hatke and Officer Ratliffe violated the Fourth and Fourteenth Amendments by falsely arresting, imprisoning, and maliciously prosecuting Ms. Baldwin. The City Defendants contend that neither Officer Hatke nor Office Ratliffe personally effectuated the arrest of Ms. Baldwin and therefore cannot be liable for false arrest or imprisonment [Dkt. 20, at 12-13]. The City Defendants also assert that are not subject to liability for Ms. Baldwin's alleged malicious prosecution since it was the Hancock County Prosecutor, not these police officers, who initiated the criminal prosecution against Ms. Baldwin. [*Id.* at 13].

Ms. Baldwin responds that it was the officers' actions that gave rise to the Probable Cause Affidavit warranting Ms. Baldwin's arrest. That role subjects them to liability for her false arrest and imprisonment claims [Dkt. 33, at 6]. Plaintiff also argues

"there is no element under a claim for malicious prosecution that it can only be brought against a law enforcement officer that personally arrests an individual." [*Id.*]

We address first whether the officers' actions, as alleged in the Complaint, could subject them to liability for false arrest or imprisonment. As referenced by the City Defendants, our court answered this question in *Schlueter v. Matney* in reviewing nearly identical facts. No. 17-C-1001, 2018 WL 2219359 (S.D. Ind. May 15, 2018). There, police officers participated in an investigation that ended with the plaintiff's arrest. *Id.* at *4. One of those officers signed a probable cause affidavit, leading to the issuance of an arrest warrant. None of the officers personally arrested the plaintiff. Plaintiff nonetheless accused the officers of false arrest and false imprisonment. We stated that when an officer does not personally effectuate an arrest, he cannot be found liable for false arrest or false imprisonment. *Id.* Plaintiff has not disputed or distinguished our analysis in *Schlueter*. Thus, as in *Schlueter*, we rule that the officers before us in the case at bar cannot be held liable for false arrest and imprisonment, absent an allegation that they personally arrested her. The claims against the Hancock County Sheriff Department are dismissed for the same reasons: they do not target the actions of the deputies responsible for actually effectuated her arrest.

Whether Plaintiffs sufficiently stated a claim for malicious prosecution turns on whether: "(1) the defendant ... instituted or caused to be instituted an action against the plaintiff ...; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Alexander v. U.S.*, 721 F.3d 418, 422 (7th Cir. 2013) (*citing City of New*

*Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). As Plaintiff correctly notes, "Indiana cases confirm that a person may 'cause' an action to be instituted for purposes of malicious prosecution even if that person does not conduct the prosecution personally." *Alexander*, 721 F.3d at 422 (reversing dismissal of malicious prosecution claim where plaintiff alleged that defendant's probable cause affidavit contained falsities, resulting in plaintiff's arrest and attempted prosecution).

Accordingly, we reject the City Defendants' assertion that the officers cannot, under any set of facts, be subject to liability for Plaintiff's malicious prosecution claim simply because they did personally prosecute Ms. Baldwin.[8] The City Defendants also argue that all the elements of malicious prosecution, specifically the element of insufficient probable cause, have not been and could not be pled in the Complaint because there was a judicial determination that probable cause existed. However, as the *Alexander* court noted, when a complaint alleges that probable cause was determined pursuant to falsities in an affidavit, this prong of malicious prosecution has been adequately pled. Here, Plaintiff alleges that the Officer Hatke filled the probable cause affidavit based on falsities and untruths, which she maintains Officer Ratliffe was aware. Taking these allegations as true at this juncture as we must, we conclude that the portions of Counts I and II as framed against the City Defendants for false arrest and

---

[8] The Seventh Circuit has held that malicious prosecution is cognizable as a constitutional tort capable of invoking Section 1983. *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013). Properly construed, a malicious prosecution claim pursuant to Section 1983 is "really one for wrongful arrest and detention in violation of the Fourth Amendment." *Camm v. Faith*, No. 18-1440, 2019 WL 4267769, at *6 (7th Cir. Sept. 10, 2019).

imprisonment must be dismissed without prejudice, but the malicious prosecution claim survives this dismissal.

4. *Counts III and IV (Violation of Statutory Civil Rights Against Officer Hatke, Officer Ratliff, the Greenfield Police Department, and the Hancock County Sheriff Department)*

The City Defendants next argue that Counts III and IV are duplicative of Counts I and II, merely recapitulating the allegations in Counts I and II but invoking section 1983, and thus warrant dismissal [Dkt. 21, at 13-14]. The City Defendants also state, "[A]s the law is clear and long standing on this point '[s]ection 1983 is not itself a front for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Spiegel v. Rabinovitz*, 121 F. 3d 251, 254 (7th Cir. 1997). They argue that Counts III and IV should therefore be dismissed because section 1983 cannot be "violated" [Dkt. 21, at 14]. Plaintiff responds that Section 1983 provides the means to assert the alleged violations of her federal constitutional rights [Dkt. 33, at 7].

We have upheld Complaints which invoke section 1983 through allegations of "section 1983 violations," as Ms. Baldwin as done here. *See Lewis v. Cty. of Henry*, No. 105CV0270JDTTAB, 2005 WL 3429253, at *4 (S.D. Ind. Dec. 12, 2005). However, our examination of Counts III and IV confirms that they do not offer any allegations distinct from those laid in Counts I and II. We thus dismiss Counts III and IV for this reason while permitting section 1983 to go forward as framed for Counts I and II.

5. *Count V (Violation of Statutory Civil Rights Against the Greenfield Police Department and the City of Greenfield – Claim for Exemplary Damages)*

The City Defendants seek dismissal of Count V, asserting that punitive damages are not recoverable against a municipality in a section 1983 action [Dkt. 21, at 4]. Plaintiff responds obliquely, arguing that the Court should not "dismiss an entire count for the inclusion of one word" [Dkt. 33, at 8]. Assuming the "one word" to which Plaintiff refers is "exemplary," it cannot be ignored: it is, after all, how Plaintiff has described her claim Count V. Plaintiff does not dispute the City Defendants' correct assertion that punitive damages are not recoverable against a municipality in a Section 1983 suit. *Robinson v. City of Harvey, Ill.*, 617 F.3d 915, 916 (7th Cir. 2010) (*citing Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)). Count V will be dismissed accordingly, with prejudice.

6. *Counts VI and VII (False Arrest and Imprisonment Against Officer Hatke)*

Counts VI and Count VII assert the state law claims of false arrest and imprisonment against Officer Hatke, the former cause of action seeking an award of compensatory damages and the latter, punitive damages. The parties reiterate their arguments relating to Counts I and II, which alleged Fourth and Fourteenth Amendment false arrest and imprisonment claims. We need not repeat our legal analysis. Because the Complaint does not allege that Officer Hatke was the arresting officer, and because Plaintiff has advanced no reason that would allow the state law claims of false arrest and imprisonment to survive when their constitutional counterparts did not, we hold that Counts VI and VII should also be dismissed.

7. *Count VIII (Malicious Prosecution Against Officer Hatke, Officer Ratliff, the Greenfield Police Department, the City of Greenfield, and Hancock County)*

Count VIII asserts a state law claim of malicious prosecutions against the above-captioned defendants. The City Defendants seek protection under the Indiana Tort Claims Act, arguing that they are immune from prosecutorial liability under [Dkt. 17]. The Indiana Tort Claims Act provides, in relevant part, that a "governmental entity or an employee acting with the scope of employment is not liable if a loss results from the following: . . . (6) The initiation of a judicial or an administrative proceedings; (7) The performance of a discretionary function . . . ; or (8) The adoption and enforcement of or a failure to enforce: (A) a law (including rules and regulations) . . . unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code. Ann. § 34-13-3-3 (2019). The City Defendants' argument is buttressed by an abundance of case law. [*Id.* at 18].

Plaintiff does not respond directly to rebut Defendants' interpretations of Indiana law. Instead, she argues, besides the point, that she is not barred from bringing a malicious prosecution claim pursuant to section 1983 and that the officers are not immune from her false arrest allegations [Dkt. 33, at 8-9]. This assertion is irrelevant to her Indiana Tort Claims Act claims. Further confusing the analysis, Plaintiff states, "Indiana does not provide an adequate remedy for malicious prosecution because of the implied immunity afforded to state actors under the Tort Claims Act" [Dkt. 33, at 10-11]. We need not tarry long in siding with Defendants' arguments here. *Townsend v. Wilson*, 652 F. App'x 449, 454 (7th Cir. 2016); *Serino v. Hensley*, 735 F.3d 588, 595 (7th Cir. 2013); *Snider v. Pekny*, 899 F. Supp. 2d 798, 818 (N.D. Ind. 2012); *Butt v. McEvoy*, 669 N.E.2d 1015, 1018 (Ind. Ct. App. 1996). The City Defendants are immune from the state

law malicious prosecution claim and Count VIII must therefore be dismissed. The same result holds as applied to Hancock County, who has also sought immunity under the Indiana Tort Claims Act [Dkt. 36, at 6, n. 2]. Count VIII is thus dismissed with prejudice with respect to all defendants.

8. *Count IX (Respondeat Superior Liability Against the Greenfield Police Department)*

Our determination above that the Greenfield Police Department is not a suable entity requires the dismissal of Count IX with prejudice.

9. *Count X (Respondeat Superior Liability Against the City of Greenfield)*

As the City Defendants have correctly stated, respondeat superior liability is not a basis for holding municipal agencies liable under section 1983. *Simpson v. Brown Cty.*, 860 F.3d 1001, 1006 (7th Cir. 2017) (*citing Monell*, 436 U.S. at 690–91). Without any surviving state law claims against the City's agents, no grounds for respondeat superior liability exist to which the City of Greenfield could be subjected. Count X must also be dismissed.

10. *Count XII (Intentional Infliction of Emotional Distress Against Officer Hatke, Officer Ratliff, the Greenfield Police Department, and Hancock County)*

Consistent with our analysis of Count VIII, the City Defendants maintain there are immunized by virtue of the Indiana Torts Claim Act from a claim for intentional infliction of emotional distress because the event that gave rise to her alleged emotional distress—Ms. Baldwin's jail custody—resulted from a judicial proceeding [Dkt. 21, at 18-19]. Ms. Baldwin has not responded to the City Defendants' Indiana Torts Claim Act arguments.

We agree with the City Defendants: Indiana law shields them from liability for this cause of action. *Camm v. Faith*, No. 414CV00123TWPDML, 2018 WL 587197, at *18 (S.D. Ind. Jan. 29, 2018), *reversed and remanded on other grounds*, No. 18-1440, 2019 WL 4267769 (7th Cir. Sept. 10, 2019) (holding that Indiana Tort Claims Act barred plaintiff's claim against law enforcement officers for intentional infliction of emotion distress arising out of alleged false arrest, wrongful imprisonment, and malicious prosecution). The same result applies to these claims against the County Defendants [Dkt. 36, at 7]. Accordingly, Count VII is dismissed with prejudice against all defendants.

To summarize Counts III, IV, V, VI, VII, VIII, IX, X, and XII with respect to the City Defendants will be dismissed. Counts I and II will be dismissed as they involve claims for false arrest and imprisonment. The Fourth Amendment claim in Counts I and II, cloaked as malicious prosecution causes of action, survives.

## II.      The County Defendants' Motion to Dismiss

The County Defendants have sought dismissal of all claims against them in Counts I, II, III, IV, VIII, XI, and XII. We have determined that Counts VII and XII require dismissal against all defendants. We address next the remaining allegations against the County Defendants.

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At minimum, a plaintiff is required to support its complaint with "'some

specific facts.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice" to

withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). *Iqbal*, 556

U.S. at 678. How much specificity is required may vary from case to case, but "'the

plaintiff must give enough details about the subject-matter of the case to present a story

that holds together.'" *McCauley*, 671 F.3d at 616 (quoting *Swanson v. Citibank, N.A.*, 614

F.3d 400, 404 (7th Cir. 2010)).

A party moving to dismiss nonetheless bears a weighty burden. "[O]nce a claim

has been stated adequately, it may be supported by showing any set of facts consistent

with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v.

American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) ("[At

the pleading stage] the plaintiff receives the benefit of imagination, so long as the

hypotheses are consistent with the complaint.")). In addressing a Rule 12(b)(6) motion,

we treat all well-pleaded factual allegations as true, and we construe all inferences that

reasonably may be drawn from those facts in the light most favorable to the non-movant.

*Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013) (citing *Iqbal*,

556 U.S. at 678).

### B. Discussion

1. *Counts I & II (Violation of Constitutional Rights Against the Hancock County
   Sheriff Department) and Counts III & IV (Violation of Statutory Civil Rights
   Against the Hancock County Sheriff Department)*

The County Defendants, specifically here the Hancock County Sheriff Department, move to dismiss the Section 1983 claims[9] for failing to state a plausible *Monell* claim. [Dkt. 21, at 9-12]. *Monell*, 436 U.S. at 658. As the County Defendants correctly argue, *Monell* instructs that governments units face liability under section 1983 only where it can be established that the subdivision, through the execution of its policy or customs, caused the alleged constitutional violation [Dkt. 21, at 9]. "A local government unit's unconstitutional policy or custom can be shown by: (1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008).

The claim against the Hancock County Sheriff's Department is simply that Ms. Baldwin was arrested by deputies pursuant to a warrant and held in the Hancock County jail. No other factual assertions creating a nexus between a constitutional deprivation arising from her arrest and any policy or custom of the Sheriff's Department are present. Plaintiff's sole arguable allegation that the Hancock County Sheriff Department executed an unconstitutional policy or custom is based on her conclusory statement that "[d]efendants acted under color of law, of a statute, ordinance, regulation, custom, or usage." This allegation is plainly inadequate in terms of placing defendants on notice of the claims against them. Such boilerplate assertions are insufficient to survive a motion to

---

[9] Counts I (compensatory damages) and II (exemplary damages) allege violations of the Fourth and Fourteenth Amendments and Counts III and IV invoke Section 1983 without mention of specific constitutional violations. As discussed in Part I.B.4, we infer that Counts III and IV are invoking Section 1983 as a vehicle for the allegations in Counts I and II. Accordingly, we apply our *Monell* analysis to Counts I-IV.

dismiss. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 886 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 679).

Oddly, Plaintiffs cites *Estate of Sims ex rel Sims v. County of Bureau*. 506 F.3d 509 (7th Cir. 2007) to support her arguments [Dkt. 34, at 3-4]. In *Sims*, the Seventh Circuit affirmed dismissal of a section 1983 complaint where the plaintiff, rather than allege the existence of an unconstitutional policy, made only general assertions that defendant acted "under color of his state office" *Id.* at 515. This precedent obviously favors the dismissal of Plaintiff's complaint. *Sims* supports our conclusion that her section 1983 claims against the Hancock County Sheriff Department must be dismissed. Thus, Counts I, II, III, and IV with respect to the Hancock County Sheriff Department will be dismissed for failure to state a claim.[10]

### 2. *Count XI (Respondeat Superior Liability Against Hancock County)*

Plaintiff finally asserts that Hancock County is liable to her under the doctrine of respondeat superior for the actions of the Hancock County Prosecutor, specifically, the prosecutor's decision to file a criminal charge against Ms. Baldwin, resulting in her false arrest, imprisonment, and malicious prosecution. Apart from the vague and unclear statement of her claim against the Hancock County Prosecutor, her respondeat superior theory fails for two additional reasons: First, to the extent these allegations are based on

---

[10] We have previously determined that punitive damages are not recoverable against municipalities, and can quickly conclude, without dispute from Ms. Baldwin beyond her objection that dismissal would be "extreme," that this rule extends to local government units such as the Hancock County Sheriff Department. *Ebrahime v. Dart*, No. 09 C 7825, 2010 WL 4932655, at *6 (N.D. Ill. Nov. 30, 2010) (*citing City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). Thus, Counts II and IV against the Hancock County Sheriff Department shall be dismissed with prejudice.

section 1983, they are meritless because section 1983 does not give rise to respondeat superior liability against local governments. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 790 (7th Cir. 2014) (*citing Monell*, 436 U.S. at 658). Second, to the extent these are common law causes of action, the claims fail because, under Indiana law, counties cannot be held vicariously liable for their prosecutors' charging decisions. *Waldrip v. Waldrip*, 976 N.E.2d 102, 119 (Ind. Ct. App. 2012). Count XI must also be dismissed with prejudice.

### Conclusion

For the reasons explicated above, the County Defendants' Motion to Dismiss for Failure to State a Claim [Dkt. 20] is GRANTED. Counts I and III against the Hancock County Sheriff Department are dismissed without prejudice. Counts II and IV against the Hancock County Sheriff Department and Counts VIII, XI, and XII against Hancock County are dismissed with prejudice. The City Defendants' Motion for Judgment on the Pleadings [Dkt. 23] is GRANTED in part and DENIED in part. Counts III, IV, VI, VII, and X as well as the false arrest and imprisonment claims in Counts I and II are dismissed without prejudice with respect to City Defendants, with the exception of the Greenfield Police Department, against whom all claims are dismissed with prejudice. Counts V, VIII, IX, and XII against the City Defendants are dismissed with prejudice. The plaintiff is granted leave to move to amend the Complaint within 30 days. The Defendants' Motions for Summary Ruling are DENIED as moot [Dkt. 27; Dkt. 28]. The Defendants' Motions to Dismiss for Lack of Prosecution are DENIED [Dkt. 39; Dkt. 40].

## SUMMARY OF DISMISSALS

| COUNT | DEFENDANT | WITH OR WITHOUT PREJUDICE |
|---|---|---|
| I (all claims) | Hancock County Sheriff Department | Without Prejudice |
| I (false arrest and imprisonment claims) | Officer Hatke; Officer Ratliffe | Without Prejudice |
| II (all claims) | Hancock County Sheriff Department | With Prejudice |
| II (false arrest and imprisonment claims) | Officer Hatke; Officer Ratliffe | Without Prejudice |
| III | Officer Hatke; Officer Ratliffe; Hancock County Sheriff Department | Without Prejudice |
| IV | Officer Hatke; Officer Ratliffe | Without Prejudice |
| IV | Hancock County Sheriff Department | With Prejudice |
| V | City of Greenfield | With Prejudice |
| VI | Officer Hatke | Without Prejudice |
| VII | Officer Hatke | Without Prejudice |
| VIII | Officer Hatke; Officer Ratliffe; City of Greenfield; Hancock County | With Prejudice |
| IX | Greenfield Police Dept. | With Prejudice |
| X | City of Greenfield | Without Prejudice |
| XI | Hancock County | With Prejudice |
| XII | Officer Hatke; Officer Ratliffe; City of Greenfield; Hancock County | With Prejudice |
| All Counts | Greenfield Police Dept. | With Prejudice |

IT IS SO ORDERED.

Date: ___9/27/2019___

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

27

Distribution:

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com

Bruce L. Kamplain
NORRIS CHOPLIN & SCHROEDER LLP
bkamplain@ncs-law.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Jared Michel Thomas
Jared Michel Thomas, Esq.
jmt@jmthomaslegal.com

Bradley J. Wombles
NORRIS CHOPLIN & SCHROEDER
bwombles@ncs-law.com